**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RICHARD A. MCEACHERN, #307-854 | * |
| | * |
| Plaintiff | * |
| | * |
| | * |
| v. | *   Civil Action No. RWT-06-1698 |
| | * |
| FRANK C. SIZER, JR, *et al.* | * |
| | * |
| Defendants | * |

ooOoo

**MEMORANDUM OPINION**

Pending is a pro se 42 U.S.C. 1983 complaint filed by Richard A. McEachern ("McEachern"), an inmate at the Roxbury Correctional Institution, requesting declaratory and injunctive relief and damages for alleged violations of his rights as guaranteed by the Constitution and under state law.  Defendants [1] have moved to dismiss the claims against them or in the alternative, move for summary judgment and McEachern has filed a reply in opposition. Defendants rely on materials beyond the scope of the complaint, and the motion shall be construed as one for summary judgment pursuant to Fed R. Civ. P. 56.  No hearing is necessary. See Local Rule 105.6 (D.Md.).  For the reasons set forth below, the court will grant the motion for summary judgment.

**I.  Background**

On March 21, 1980, McEachern was convicted of murder in the Superior Court of Maine, and sentenced to life imprisonment.  Plaintiff claims his transfer to Maryland was involuntary.

---

[1] On November 11, 2006, Plaintiff moved to amend the Complaint to remove Frank Sizer, former Commissioner of the Division of Correction, and Dr. Rohrer as party defendants. Paper No. 16.  Petitioner moved to add John Rowley, Acting Commission of the Division of Correction as a defendant.  The court will grant the Motion by separate Order.

Defendants proffer that "[o]n each occasion, apparently becoming tired of out-of-state prisons, Plaintiff has arranged to return to Maine. At the heart of the instant complaint is Plaintiff's desire, once again, to return to his home state's prison system. Unfortunately for the Plaintiff, Maine is no longer inclined to accept him." Paper No. 18 at 2. Verified records filed by Defendants show that McEachern requested and received transfers from Maine to prisons in other states. Def. Ex. 1. at 6, 13, 29. Pursuant to the Interstate Corrections Compact (ICC), he has served portions of his sentence in Massachusetts, New Jersey and New Hampshire. See id. at 5, 23.

## II. Claims Presented

The gravamen of the McEachern's claims is that he wants to be moved to a prison in Maine. He contends that he wants to run for an unspecified political office in Maine, and cannot do from a prison cell in Maryland.[2] Def. Ex. 1 at 12. McEachern contends that the Commissioner of Corrections has abrogated his duty to "demand" that Maine reclaim him. Complaint at 4. He also alleges that his lack of access to Maine courts and legal materials has deprived him of his ability to challenge his alleged involuntary transfer to Maryland or pursue research for obtaining post-conviction relief. Lastly, he contends that Defendant Arnold fabricated an infraction report to retaliate against him for threatening to file a grievance and to also "undermine Plaintiff's First Amendment rights. " McEachern complains the infraction report resulted in a 45-day assignment to disciplinary segregation. He also alleges that he suffers from post traumatic stress disorder[3] and

---

[2] McEachern was notified in a February 22, 2005, letter from the Maine Department of Corrections that his incarceration in Maryland does not change his legal residency for the purpose of running for political office. Def. Ex. 1 at 12. The letter states "[e]ven if you were in Maine, you would have to do most of your campaigning through written communication and you can do that just as easily from Maryland." Id.

[3] Defendants' verified exhibits show there is no medical basis for McEachern's claim that he suffers from post traumatic stress disorder. Def. Ex. 1 at 36.

2

requires placement in single-cell under the Americans with Disabilities Act.

### III.  Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [the nonmovant's] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

## IV.  Analysis

### A.  Transfer to Maine Prison

The Interstate Corrections Compact (ICC) is an agreement between states, enacted by statute in each participating state, that authorizes the transfer of one State's prisoner to another State's prison. See, e.g.,  Md Code 8-602  "The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." Md. Code 8-602. The ICC is not a federal law.  Accordingly, Plaintiff cannot utilize § 1983 to assert a claim in this Court based upon an alleged violation of the Interstate Corrections Compact. See, e.g., Fisher v. Carroll, 375 F. Supp.2d 385, 394-95 (D. Del.2005); Smith v. Cummings, 445 F.3d 1254, 1259 (10th Cir.2006); *Ghana v. Pearce,* 159 F.3d 1206, 1208 (9th Cir.1998); Stewart v. McManus, 924 F.2d 138, 142 (8th Cir.1991).[4], 449 U.S. 433, 439-40 (1981) (an interstate compact constitutes federal law only if: (1) it falls within the scope of the Constitution's Compact Clause; (2) it receives congressional consent; and (3) its subject matter is appropriate for congressional legislation).

Plaintiff also fails to state a claim for deprivation of liberty without due process under the Fourteenth Amendment arising out of his confinement in Maryland.  It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. See Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); see also Wilson v. Johnson, 805 F.2d 394, 1986 WL 18052 (4th Cir.1986) (unpublished) (prisoner has no constitutional right to a change of his custodial location by reason of the Interstate Corrections Compact).  Thus, even if McEachern's transfer to Maryland were involuntary, no liberty interest is implicated.

---

[4]     See generally Cuyler v. Adams

Governments may confer on prisoners liberty interests that are protected by the Due Process Clause. Such interest, however, will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by The Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v Conner, 515 U.S 472, 484 (1995). Nothing in the ICC "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" so as to implicate a liberty interest in his transfer." See Garcia v. Lemaster, 439 F.3d 1215, 1219 (10th Cir. 2006); Ghana, 159 f.3d at 1209. In sum, McEachern does not have a liberty interest in being incarcerated in a particular institution and the Commissioner of the Division of Correction is under no duty to "demand" that Maine take McEachern back.[5]

In addition, McEachern fails to allege how either former Commissioner Sizer or Acting Commissioner Rowley were involved in the actions about which he complains. To the extent McEachern seeks to hold the Commissioner of the Division of Correction vicariously liable for the actions of employees, he cannot establish liability based on the facts alleged, as the doctrine of respondeat superior does not apply in § 1983 actions. See Monell v. Department of Social Services, 436 U.S. 694 (1978). This claim will be denied.

**B. Access to Maine Legal Materials**

McEachern's next claim is that he lacks access to legal materials from Maine. In Bounds

---

[5] Although under no legal obligation to do so, Maryland officials attempted to effect McEachern's return to Maine, per his request, but Maine declined to accept him Def. Ex. 1 pp. 3-14. According to Division of Correction Directive 100-180 which governs procedures for terminating the Interstate Corrections Compact process, if the "sending state" [Maine] refuse the request to transfer back, the inmate remains in the receiving state until released by the court, parole, mandatory supervision, or expiration of sentence. Def. Ex. 1 at 4.

v. Smith, 430 U.S. 817 (1977), the Supreme Court of the United States held that "the fundamental constitutional right of access to the courts" requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained the in the law. Id at 828.  In Lewis v. Casey, 518 U.S. 343, 354 (1996), the Supreme Court explained *Bounds* requires providing inmates with tools needed "to attack their sentences directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other ligating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 356.  To establish a violation of access to the courts, an inmate must show actual injury. See id. at 349.  The inmate "...must... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. " Id. at 351.

McEachern's claim suffers from the same deficiencies identified in Lewis.  McEachern fails to specify any direct injury as a result of the purported lack of access to Maine legal materials. McEachern fails to show he has missed any deadlines or failed to comply with any technical filing requirements.  He fails to demonstrate that he has suffered actual prejudice to his ability to proceed with a particular protected claim.  See Strickler v. Waters, 989 F.2d 1375, 1383 (4th Cir. 1993); O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir 1997).

It also bears noting that Maryland prison officials have provided McEachern with the Maine legal materials he has requested, including Maine's Rules of Procedure. Def. Ex. 2 at 4-6. Plaintiff's contention that he cannot pursue legal redress in Maine's courts from prison in Maryland is discredited by a June 5, 2003, letter from Diane E. Sleek, Assistant Attorney General for the State of Maine, in which she arranged for a motions hearing by telephone in a case filed by McEachern. Def. Ex. 1 at 17.  McEachern provides no reason why his imprisonment in Maryland precludes him

from continuing to pursue other remedies are available to him in the Maine courts.

McEachern has no constitutional right to demand his place of incarceration. Absent any indication of actual prejudice to his ability to proceed with a particular protected legal actions, the court finds the denial of access claim without merit.

### C. Infraction Claim

Lastly, McEachern claims that Defendant Keith Arnold fabricated an infraction report against him in retaliation for insisting on placement in a single cell due to alleged post-traumatic stress disorder. McEachern was later found guilty of the infraction and placed on administrative segregation. Def. Ex. 1 at 38-46.

To prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" Gill v. Mooney, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir. 1983)); Pierce v. King, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1989), citing Adams v. Rice, 40 F. 3d 72, 74 (4th Cir. 1995).

A claim of retaliation must implicate a constitutional right. *See id.* at 75. Bare assertions of retaliation do not amount to a violation of constitutional magnitude. *See id.* at 42. There is no

constitutional right to be placed in a single cell. In this case, there is no evidence that McEachern suffers from post traumatic stress disorder [6] and no basis to find that he was falsely cited with an infraction for seeking an accommodation for a purported disability. To the extent McEachern alleges retaliation because he threatened to sue Defendant Arnold, his allegation is unsupported and conclusory. See White v. White, 886 F. 2d 721, 723 (4th Cir. 1989).[7]

### V. Conclusion

Accordingly, Defendant's Motion for Summary Judgment is granted. McEachern's Motion to Strike Defense Motion for Dismissal or in the Alternative for Summary Judgment is denied.[8]

A separate Order shall be entered consistent with this Memorandum Opinion.[9]

Date: 2/22/07

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[6] *See supra* note 3.

[7] McEachern's sanction was a reprimand. He was not deprived of good conduct credit as a result of the infraction. Def. Ex. 1 38-40. Plaintiff does not allege that his disciplinary proceedings were deficient. See Superintendent Mass. *Corr. Inst. v. Hill,* 472 U.S. 445, 454-55 (1986).

[8] Contrary to McEachern's allegations, Defendants' exhibits were accompanied by a supporting affidavit, and properly filed in accordance with court rules for electronic filing.

[9] To the extent McEachern generally alludes to his rights under state law, the court declines to exercise supplemental jurisdiction over any state law claims that might be presented.